**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 02-2045 |
| v. | |
| JENNIFER EDWARDS, | |
| Defendant - Appellant. | |

**ORDER**

Filed April 9, 2003

Before **LUCERO** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

Appellant's motion to publish the order and judgment dated March 13, 2003, is granted. A copy of the published opinion is attached.

Entered for the Court
PATRICK FISHER, Clerk of Court

By:

Deputy Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JENNIFER EDWARDS,

Defendant - Appellant.

No. 02-2045

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-01-399-LH)**

Susan Bronstein Dunleavy, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender), Albuquerque, New Mexico, for Defendant-Appellant.

Norman Cairns, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **LUCERO** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

**ANDERSON** , Circuit Judge.

Jennifer Edwards pled guilty to bank fraud, committed in violation of 18 U.S.C. § 1344, and was sentenced under the United States Sentencing Commission, Guidelines Manual (Nov. 2000) (USSG), to five months imprisonment, to be served at a halfway house, followed by five years of supervised release, including five months on home confinement under the electronic monitoring program. The sentence was based on a calculated total offense level of 12, two levels of which reflected an adjustment, pursuant to USSG §3B1.3, for abusing a position of trust. On appeal, Ms. Edwards contends that the district court erred in applying that adjustment because she did not occupy the type of position for which §3B1.3 was designed: a position "characterized by professional or managerial discretion ( i.e., substantial discretionary judgment that is ordinarily given considerable deference)." USSG §3B1.3, comment. (n.1).

As relevant to our disposition of this case, "[w]hether a defendant occupied a position of trust within the meaning of USSG § 3B1.3 is a factual question, and we will affirm the sentencing court unless we find its decision clearly erroneous." United States v. Koehn, 74 F.3d 199, 201 (10th Cir. 1996). Applying that standard to the analysis set forth below, we vacate the sentence and remand for resentencing.

## A.

At the sentencing hearing in this case, the district court adopted the Presentence Investigation Report (PIR), and one witness testified, establishing the following central facts. From 1992 through 1998, Ms. Edwards worked as an hourly wage employee in the outdoor advertising division of the accounting department of Bowlin, a New Mexico retail and outdoor advertising company. In that job, she largely handled accounts receivable. More specifically, her duties during the pertinent period consisted of receiving checks mailed in by Bowlin customers, preparing them for deposit, posting the payments to customer accounts and the cash receipts journal, sending out bills, calculating customer account balances, and compiling and forwarding to sales personnel and her supervisors reports reflecting this data. Cash receipts journal reports were incorporated in the company's general ledgers and, subsequently, its financial statements.

Ms. Edwards' duties also included posting credits to customer accounts. Credits were granted in amounts determined by authorized company personnel when they were advised by customers of various problems with their outdoor signs. Ms. Edwards had no authority to grant credits and no authority to exercise discretionary judgment with respect to any other part of her job. Her tasks were solely ministerial.

From late December 1997, through mid-September 1998, Ms. Edwards embezzled $31,395.06 from Bowlin by failing to post certain customer payments and by re-routing some fifty-nine checks reflecting those payments to her boyfriend's account at The First Security Bank—an account to which she had access. In all but two instances, she accomplished this by simply endorsing the back of the check "for deposit only" to the number of that account. In two instances she changed the name of the payee on the check to correspond to the account. She then included the checks in the regular deposits she prepared. She concealed this diversion of payments by posting false credits to the accounts of customers whose checks were diverted. Thus, the accounts balanced for reporting purposes.

In September 1998, a bank teller finally noticed the discrepancy on the checks between Bowlin, as payee, and the account number listed on the back of the check for deposit purposes. This discovery led eventually to the bank fraud charge in this case.

**B.**

Section 3B1.3 of the Sentencing Guidelines, and Application Note 1 of the Commentary to the Guideline, provide in pertinent part, as follows:

**Abuse of Position of Trust or Use of Special Skill**

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by **2** levels. <u>This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic</u> . . . .

*Commentary*

*Application Notes* :

1.    "*Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference* ). *Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (* e.g. *, by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.*

USSG §3B1.3, comment. (n.1) (emphasis added).

As indicated above, Ms. Edwards contends that this guideline adjustment should not have been applied to her because, among other things, her job was purely ministerial and did not entail substantial discretionary judgment. The government, on the other hand, emphasizes Ms. Edwards' alleged specialized

-5-

accounting skills, her minimal oversight, her virtual exclusive control over the accounts receivable and customer billing records—with resulting impact on the company's general ledger—and her use of her position to conceal the defalcation.

In the fraud context, we have recognized that the application of §3B1.3 is categorized and analyzed somewhat differently depending on the defendant's status and type of activity in which the defendant is engaged or purports to be engaged. One of those categories relates to employees of a business, such as to the defendant in this case. It involves those situations "where the defendant steals from his employer, using his position in the company to facilitate the offense." Koehn, 74 F.3d at 201. See also United States v. Pappert, 112 F.3d 1073, 1080 (10th Cir. 1997). Typically, the question of whether an employee occupied a position of trust within the meaning of §3B1.3 is a heavily fact-specific determination to be made by the district court using the guideline and other factors which we have recognized. See, e.g., United States v. Haber, 251 F.3d 881, 890-91 (10th Cir. 2001).

However, as the emphasized portions of the guideline and commentary set out above indicate, the adjustment under §3B1.3 is not intended to be routinely applied to every employee fraud or embezzlement case. As we have stated in an analogous context, the fact is that "[i]n every successful fraud the defendant will have created confidence and trust in the victim, but the sentencing enhancement is

not intended to apply in every case of fraud." Koehn, 74 F.3d at 201. Thus, the fact that Ms. Edwards was trusted by her employer with significant responsibility—even to the point of allowing her to bypass usual accounting controls and pick up customer checks from incoming mail—is not determinative. Nor does the fact that she made entries in and compiled balances from customer accounts and the cash receipts journal necessarily establish that she possessed special accounting skills.

A careful review of the district court's ruling convinces us that with the single important exception discussed below, the court understood the guideline and ably and conscientiously sorted out the facts. Thus, for instance, we agree with the district court's statement during the sentencing hearing that job titles themselves do not control; actual duties and authorized activities do. R. Vol. III at 17-18. We also agree with the court's findings that company officials trusted Ms. Edwards, and that her position gave her access to customers' checks and important company records. Id. at 52-53.

However, the evidence does not support the district court's suggestion that Ms. Edwards either had the discretionary authority to grant credits to customers, id. at 53, or, for that matter any other authority to make substantial discretionary judgments regarding company revenues or expenses. Ms. Edwards' work, as she contends on appeal, was indeed clerical and ministerial. Opportunity and access

-7-

do not equate to authority, or to the kind of "substantial discretionary judgment that is ordinarily given considerable deference." USSG § 3B1.3, comment.(n.1).

We agree with the Seventh Circuit that the guideline language regarding discretion refers, in general, to the type of trusted position in an organizational setting—

> where business or similar entities charge particular employees with deciding, on a case-by-case basis, whether a particular expenditure or transfer of company funds or other valuables is necessary or beneficial to the organization. Some employees have unfettered authority to spend company money; others provide initial authorization that for reasons of efficiency is subject only to nominal review.

United States v. Tiojanco, 286 F.3d 1019, 1021 (7th Cir. 2002) (discussing hotel clerk having authority to evaluate complaints and exercise discretion with respect to issuing refunds and credits).

In sum, the facts show no more than that Ms. Edwards' job was responsible but ministerial. The Sentencing Commission, by its language in Application Note 1, deliberately set the bar at a higher level. Ms. Edwards' criminal conduct was the type of offense to which §3B1.3 refers by its statement that "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." USSG §3B1.3. Accordingly, we hold

that the adjustment pursuant to §3B1.3 was clearly erroneous, and we, therefore,

VACATE the sentence and REMAND for resentencing. [1]

_____

[1]The question of how broadly or narrowly the term "victim" should be defined in relation to the position of trust held by the defendant was not raised at any point in this case. Thus, we do not address the issue except to observe that it is a matter of dispute among the circuits. See, e.g., United States v. Guidry, 199 F.3d 1150, 1160 n.6 (10th Cir. 1999) (discussing cases). In any event, the judgment in this case specifically included an amount of restitution to Bowlin, as well as restitution to the bank, leaving no doubt that both were victimized on a quantifiable basis.